ZEBULON S. BRANSON ET AL., APPELLANTS, V. ISAAC R.
BRANSON ET AL., APPELLEES.

FILED APRIL 24, 1909.　NO. 15,638.

1. **Partition: Costs: Attorney's Fees.** Where partition proceedings
are not amicable, the fees of defendants' counsel are not taxable
as costs.

2. **Costs: Statutes: Construction.** The power to award and tax
costs in legal proceedings being unknown at common law, stat-
utes providing therefor are to be strictly construed.

3. **Appeal: Costs: Attorney's Fees: Review.** In partition, where
fees of defendants' counsel have been allowed as costs in the form
of a judgment, a motion for a new trial, and not a motion to re-
tax costs, is the proper procedure to obtain a review of such
allowance in this court.

APPEAL from the district court for Lancaster county:
EDWARD P. HOLMES, JUDGE. *Reversed.*

*Charles A. Robbins,* for appellants.

*Burr & Marlay, contra.*

DEAN, J.

This is an appeal from the allowance of an attorney's
fee in a partition proceeding, wherein the trial court, as
part of its final decree, caused the following journal entry
to be made: "It is further ordered that Burr & Marlay,
attorneys, and appearing in this case on behalf of certain
heirs, parties hereto, be allowed the sum of $500 as at-
torney's fees, the same to be paid by all of said heirs
equally, and the same to be paid out of the proceeds of
the sale of said property now in the hands of the referees."
The plaintiff and three defendants appeal.

To obtain an understanding of the issues, the following
summary of the record is submitted: The petition is in
the usual form, and alleges that Rachel Branson, a widow,
died intestate in Lancaster county on March 14, 1906,
being the owner of certain real estate therein and in

Howard county, and that she left surviving her three sons and two daughters, her sole heirs at law, to wit, Zebulon S. Branson, Isaac R. Branson, Charles M. Branson, Emily B. Carter and Caroline B. Brown, and that each of the heirs upon the death of their mother became the owner of an undivided one-fifth interest in the lands; that defendant Isaac R. Branson is administrator of decedent's estate; that the time fixed by the county court for filing claims has expired, and no claim has been filed except one by Isaac R. Branson, administrator, which has not been approved or rejected; that there are no other debts or claims against the estate; that Isaac R. Branson has money and personal property in his hands as administrator sufficient to pay all costs and expenses of administering the estate and to pay his claim if it is allowed, except the sum of about $2,000; that plaintiff Zebulon S. Branson, as an heir of Rachel Branson, has given his bond with sureties, duly approved by and filed with the county judge, to secure the payment of his just proportion of the debts and expenses of the estate of Rachel Branson, and to indemnify the administrator.

Isaac R. Branson, by his attorneys Burr & Marlay, hereinafter called claimants, filed his separate answer in the partition proceedings on May 13, 1907, and alleged that, besides those mentioned in the petition, there are other and contingent claims named in the statutes that can and may be filed hereafter; admits he had filed a claim which, with interest, amounts to nearly $9,000; admits there are no other debts or claims filed against said estate at this time; alleges "there is no good reason why said estate should be partitioned at this time; but, if the court is of the opinion that the title would be good and satisfactory to the purchaser who would buy the same in these proceedings, that this answering defendant has no objections thereto, if said estate will bring its full and fair cash market value by forced sale under an order of this court"; admits he has money and personal prop-

22

erty in his hands as administrator in the sum of $5,575.30, but denies its sufficiency to pay the costs of administration, "together with said claim against said estate, if the same shall be allowed"; denies that Zebulon S. Branson has filed a good bond as alleged by him, and alleges "that this defendant has, or soon will, file his application in said court to require a good * * * bond * * * with sureties * * * to indemnify the administrator in said premises, and to save harmless said estate in the payment of all claims, including those now filed as well as any contingent claim that may be filed under the statute"; alleges a misjoinder of parties defendant, in that Emily B. Carter's husband, Dilworth Carter, who lives in Illinois, "is not only a proper, but a necessary, party, * * * and, if the court holds said action is not premature, then this defendant prays" for partition and sale of the property.

The record shows that on May 23, 1907, the partition proceedings were tried and "submitted to the court, and passed until May 31 for decree and further appearances," when Dilworth Carter, for whom no process had been issued, of his own motion entered his voluntary appearance and consented to the decree. On the same day the claimants, as attorneys for Isaac R. Branson, applied for an order requiring plaintiff and all the heirs, except their client Branson, to execute a bond "in the sum of $1,000 each before the partitioning of the property." In the decree the court ordered the referees to make return on or before August 15, 1907. On July 11, by agreement of attorneys, the time for the return of the referees was modified by an order of the district court so as to allow them to make their report on or before August 22, instead of on August 15, as originally made. On August 22 the referees reported a sale wherein was realized $16,447.70. On September 11 Isaac R. Branson, as administrator, by attorneys other than claimants, objected to the confirmation of the sale of two of the tracts of land because of inadequacy of the amount realized at the sale; that on

October 5 the plaintiff and all defendants, by their attorney, except Isaac R. Branson and his wife, moved for and obtained a confirmation of the sale of the land and distribution of proceeds. The objections, so far as the record discloses not being supported by any showing, were ignored.

On October 7 following, in pursuance of his contention, Isaac R. Branson, by the claimants as his attorneys, filed a motion objecting "to the payment of any money now in the hands * * * of the referees to Zebulon S. Branson, Charles M. Branson, Emily B. Carter and Caroline B. Brown *. * * until first a good * * * bond is made * * * and delivered to the clerk * * * by them to indemnify * * * creditors of the estate in * * * at least $4,000 apiece," and objecting "particularly to the payment of any money to Charles M. Branson" because he "is indebted to said estate on his unsecured promissory note in the sum of $1,000," and more than two years' unpaid interest, which he is unable to pay; that said Charles M. Branson has no property above his legal exemptions; "and, for all the reasons set forth in the following affidavit, this applicant moves the court to require said heirs and each one of them to give bond in the sum of $4,000." The claimants in their brief invite an inspection of the numerous affidavits in the record, and among them we find one by Isaac R. Branson in support of the above motion, wherein he avers, in substance, that he is plaintiff in "a good and just cause of action" against the estate pending in the district court for Lancaster county, and the sum involved is about $10,000; "that it is absolutely unjust and inequitable * * * to pay out the moneys now in the hands of the court without absolute security to pay said indebtedness if affiant is successful in said law suit; that all of the real estate * * * has been sold * * * and the money is now in the hands of this court and subject to its order; that there is nothing of any consequence to pay affiant's claim in said law action if he is successful therein, save and

except some personal property, consisting of moneys not exceeding the sum of about $5,000"; that the expense of probate and of this action in this court will be large; "that his fees as administrator * * * must be taken into account; that Emily B., Carter lives at Fulton county, Illinois, and is outside the jurisdiction of this court; that it would be very expensive for affiant, in case he is successful in his law action, to recover back any portion from her; that both Zeb and Charlie Branson are pugnacious, litigious and stubborn, and will, in case affiant is successful in said suit, refuse to pay affiant without a lawsuit"; that Charles M. Branson's property, except his home which is exempt, stands in his wife's name; "that Charles M. Branson is now indebted to said estate on his unsecured promissory note in the sum of $1,000" and $125 unpaid interest, and that "he is financially unable to make said payment; * * * that affiant as administrator * * * has endeavored * *. * to get him to pay said note and * * * interest, * * * and could not do so, and affiant is sure and positive that not only on said note there must be a struggle in the courts, but that, if he should win and be successful in his said law action, * * * he will have then a protracted and expensive litigation caused solely by the action of said other heirs in this estate."

The record discloses that claimants on their own behalf filed an affidavit on October 12, 1907, in pursuance of a motion theretofore filed by them, wherein they moved the court for an allowance "as attorneys' fees for services rendered in the above entitled cause, to be paid out of the fund now in the hands of the court subject to distribution." In their affidavit the claimants state, in substance, their employment by their client "to see to it that proper parties were made in this action; that proper bonds were given by all the heirs in these proceedings to secure alleged creditors of the estate whose claims have been filed and where suits are pending; that one creditor has a claim amounting to about the sum of

$9,000, and the same is for trial  *  *  *  at the present term;  *  *  *  to aid  *  *  *  in obtaining as large a price as possible for the land, and see to it that proper title was obtained for the purchaser, and to generally protect the interest and rights of Isaac R. Branson in this proceeding;  *  *  *  that the labor and services of affiants in these proceedings, as shown by the files in this court, are reasonably worth the sum of 10 per cent. of the amount realized in the sale of said property. (Signed) L. C. Burr, C. C. Marlay." On the same day the following affidavit was filed: "Charles A. Robbins, being first duly sworn, says that he is attorney for the plaintiffs herein and for all the defendants except Isaac R. Branson and Mida Branson; that, in addition to appearing in court on all proceedings had herein and to preparing all papers filed herein bearing his signature or indorsement, he has prepared all orders, decrees, judgments and journal entries and bonds made and filed herein, and all reports and notices made or filed herein."

From an inspection of the entire record we incline to the belief that the learned trial court, in allowing the fee complained of, did so upon the theory that attorney's fees in a partition proceeding extend to and include the services of attorneys in a contest over the distribution of the proceeds of the sale, and that such fees are properly chargeable as costs in the case. To this theory we cannot give our assent. To do so would be to open a door to a species of adventurous litigation that would in some instances terminate only with the entire absorption of the estate involved.

It is vigorously urged by claimants that the partition suit was amicable and their fee reasonable, and upon these grounds they urge the justice of their cause. The disposal of the first part of their contention absolves us from the necessity of discussing the reasonableness of their fee. Section 841 of the code is as follows: "All the costs of the proceedings in partition shall be paid in the first instance by the plaintiffs, but eventually by all the

parties in proportion to their interests, except those costs which are created by contests above provided for." This statute was construed in the case of *Oliver v. Lansing,* 57 Neb. 352, and in *Johnson v. Emerick,* 74 Neb. 303, and upon principle both cases sustain the contention of appellants. 11 Cyc. 24: "At common law costs were not recoverable *eo nomine.* Costs can therefore be imposed and recovered only in cases where there is statutory authority therefor. * * * The courts cannot make * * * rules or orders and impose costs thereunder, unless the power to do so is expressly given them by statute." The same author at page 104 says: "Attorney's fees are not allowable in the absence of a statute, or in the absence of some agreement or stipulation specially authorizing the allowance thereof." Bouvier says: "A party can in no case recover costs from his adversary unless he can show some statute which gives him the right. Statutes which give costs are not to be extended beyond the letter, but are to be construed strictly." We are not aware of any case wherein this court has before had presented to it for determination the question of taxing fees as costs for the payment of an attorney who appears solely upon request and in behalf of a defendant in a partition proceeding presenting a record such as the one before us. All of the adjudicated cases upon this subject, to which our attention is called, discuss only the propriety of the payment of the fees of counsel for plaintiff in an amicable proceeding.

The real purpose of the appearance of claimants in behalf of their client in the partition proceedings we believe is disclosed in appellees' brief, wherein the claimants say they were employed "to generally protect the rights of Isaac R. Branson in these proceedings." Sufficient appears in the pleadings, motions and affidavits to convince us that the partition proceedings were not amicable in the sense to which this and other jurisdictions are committed in this branch of legal procedure, nor in the sense in which that term is ordinarily used. The answer ap-

Branson v. Branson.

pears to tender an issue and invite a contest upon the propriety of the time selected for partitioning the estate, wherein it is alleged "that there is no good reason why said estate should be partitioned at this time." This allegation is directly counter to the purpose of the commencement of the partition action, and opens up a field of controversial activity which we believe is not at all consistent with the generally accepted view of an amicable proceeding. In other respects, too, the answer appears to us to be belligerent in tone and defiant in attitude. This conclusion is borne out by other parts of the record, notably the affidavits.

The claimants contend that the action of the trial court in allowing the fees complained of is not properly reviewable because of failure to file a motion to retax costs. We do not believe this point is well taken. The claimants cite none, and we know of no authorities that will support their contention. We doubt if upon principle it can be maintained. The authorities generally hold, as pointed out by appellants' counsel in his argument, that a motion to retax costs is proper where the taxation is by the clerk, but that it does not apply where an allowance has been made by the court in the form of a judgment, as in the case at bar, the distinction being that the latter is the act of the court and reviewable on appeal, while the former is a ministerial act of the clerk which may be corrected by the court upon motion. The question is properly presented in the record by motion for a new trial. *Meade Plumbing, H. & L. Co. v. Irwin,* 77 Neb. 385; *Smith v. Bartlett,* 78 Neb. 359; *Ainley v. American Mutual Fire Ins. Co.,* 113 Ia. 709; *Ivey v. Gilder,* 119 Ala. 495.

Counsel for appellants contends that the trial court erred in rendering its judgment for the fees of defendants' counsel in the names of the attorneys, instead of in the name of the principal, and cites some authorities that uphold this doctrine, but the point is somewhat technical, and as we have disposed of the case upon other grounds

favorable to his contention it is unnecessary to consider or to determine this point.

After a careful examination of the record, we are convinced that the judgment of the district court must be, and it hereby is, reversed and remanded for further proceedings in accordance with law.

REVERSED.

REESE, C. J., did not sit, and took no part in this case.